## THE STATE use of WILCOXEN vs. WOOTTON.

1815.
DECEMBER.

The State
vs
Wootton

APPEAL from *Montgomery* County Court. An action of debt was brought, on the 22d of November 1811, on an administration bond, executed to the state on the 10th of November 1788, by *Ruth Wilcoxen. Thomas Swearingen, George Wilcoxen,* and *Richard Wootton,* (the defendant and now appellee,) conditioned, that if the above bound *Ruth Wilcoxen* and *Thomas Swearingen,* administrators of all and singular the goods, chattels and credits, of *George Wilcoxen,* late of *Montgomery* county, deceased, do make, &c. and concluded in the usual form. The defendant pleaded general performance, and the act of 1729, *ch.* 25, *s.* 21, limiting the time within which actions on administration and testamentary bonds shall be brought. The plaintiff, by the replication to the first plea, stated that *George Wilcoxen,* otherwise called *Anthony Wilcoxen* of, &c. deceased, died intestate, leaving a widow and five children, amongst others *Anthony,* for whose use this suit is brought. That administration on the estate of the said *George Wilcoxen,* otherwise called *Anthony Wilcoxen,* was granted to *Ruth Wilcoxen,* and *Thomas Swearingen,* who entered into bond, &c. and returned an inventory amounting to £227 11 1, which sum remained to be divided amongst the widow and five children, whereof the widow was entitled to a third. That the one fifth of the personal estate of the said *George,* otherwise called *Anthony,* in five parts, to be divided among his five children, after the widow's thirds deducted, amounted to £80 6 9, belonging to the said *Anthony,* for whose use this suit is brought, as one of the heirs and representatives of the said *George,* otherwise called *Anthony,* the intestate, which said sum the administrators had not paid, &c. The replication to the *second* plea stated, that the said *Anthony,* in the endorsement of the original writ mentioned, was an infant under the age of 21 years, and while so an infant was, on the 1st of September 1794, removed to parts beyond the seas, viz. in the state of *Virginia,* where he continued until the 1st of October 1811, when he returned into this state, and that within six years next after his return, to wit, on, &c. the original writ was sued forth. The defendant rejoined to the first replication, that *George Wilcoxen,* named in the bond on which this suit was brought,

county court refused to permit the evidence to be given, but on appeal *reversed.*

In an action on an administration bond executed on the estate of *George W.* the defendant pleaded general performance, and the plaintiff replied non performance, setting forth the death of *George W,* otherwise called *Anthony W,* intestate, and the granting administration, &c. the return of an inventory by the administrators, &c. in the usual form of such replications, describing the deceased throughout as *George W,* otherwise called *Anthony W.* The defendant rejoined, that *George W,* was not called or known by the name of *Anthony W.* The inventory returned by the administrators was on the estate of *Anthony W.* Evidence was offered that the name of *George W* was inserted in the bond by the defendant, one of the sureties therein. The plaintiff offered to prove that the *George W,* named in the bond, was known by the name of *Anthony W,* and that R W and T S, the obligors in the bond, never were executors or administrators on the estate of any other deceased but the one named in the bond, and that the inventory was returned by them as administrators of the deceased mentioned in the bond. And also offered to prove by parol evidence, that the *George W* deceased, mentioned in the bond, and the *Anthony W,* mentioned in the inventory, were one and the same persons; and offered to read in evidence the inventory, stated to be of the goods, &c. of *Anthony W,* and proved by t. W and T S the administrators. The

and on whose estate letters of administration were grant-
ed, was not called or known by the name of *Anthony Wil-
coxen*, and that no letters of administration were ever
granted to the said *Ruth* and *Thomas;* that no inventory
on the said intestate's estate, mentioned in the said bond,
ever was returned, &c. To the *second* replication the de-
fendant rejoined, that the original writ was not issued
within six years after the said *Anthony* arrived at the age
of 21 years, and came in the state as aforesaid. Issues
were joined; and at the trial the plaintiff offered in evi-
dence, that the name "*George Wilcoxen*," in the original
bond in this case, where the said name follows immediate-
ly the words "*chattels and credits of*," and precedes im-
mediately the words "*late of Montgomery county, deceas-
ed*," in the condition of the said bond, is in the proper
hand-writing of the defendant, one of the obligors in the
bond. The plaintiff then offered to prove, that the *George
Wilcoxen*, deceased, named in the condition of the bond,
was known by the name of *Anthony Wilcoxen;* that *Ruth
Wilcoxen* and *Thomas Swearingen*, obligors in the bond,
never were executors or administrators on the estate of
any other deceased but the one named in the condition of
the bond, and never had from the orphans court any let-
ters testamentary or of administration except those refer-
red to in the bond, and never returned any other invento-
ry than the one hereinafter referred to. And also offered
to prove, by one of the appraisers whose name is signed
to the said inventory, and by the register of wills, that
the said inventory was returned by them as administrators
of the said deceased, mentioned in the condition of the
bond, and were assets of the said deceased. And also of-
fered to prove by parol evidence, that the *George Wilcox-
en*, deceased, mentioned in the condition of the bond, and
the *Anthony Wilcoxen* mentioned in the said inventory,
were one and the same persons. And offered to read to
the jury the said inventory, stated to be "an inventory of
the goods and chattels of *Anthony Wilcoxen*, late of *Mont-
gomery* county, deceased," and signed by certain persons
as the nearest of kin, by certain creditors, and by the ap-
praisers, and proved on the 11th of February 1789, by
*Ruth Wilcoxen* and *Thomas Swearingen*, administrators
of *Anthony Wilcoxen*, deceased, before the register of wills
of *Montgomery* county. To the admission of the evidence

1815.

The State
v.
Wootten

above offered, the defendant objected; and the Court, [*Harwood* and *Ridgely*, A. J.] refused to permit it to be given; and were of opinion, and so directed the jury, that the inventory offered by the plaintiff cannot be admitted as evidence to charge the defendant for assets alleged to have come to the hands of the administrators, unless it shall appear to the jury that the intestate was called and known by the name of *George Wilcoxen*, as well as *Anthony Wilcoxen*; and that the bond itself, and the evidence above stated, is not sufficient evidence of that fact. The plaintiff excepted; and the verdict and judgment being for the defendant, this appeal was prosecuted by the plaintiff.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE, JOHNSON, and MARTIN, J.

*Taney*, for the Appellant. The name of *George* was inserted in the bond instead of *Anthony*. There was no evidence what was the true name. The parties called him *George*, others called him *Anthony*. If a man signs a bond by a wrong name, it may be said he is called as well by one name as another. 4 *Bac. Ab.* tit. *Misnomer and Addition*, (B) *(and notes.)* He is *estopped* from denying the name signed. 10 *Vin. Ab.* 463. The principle here is the same as if the obligors had called themselves by different names. They named the deceased by a wrong name, and they are bound by it.

*F. S. Key*, for the Appellee. If the evidence offered were admitted, it would be letting in parol proof to deny the record. The estate administered on is different from the estate on which the plaintiff claims. An attempt was made to prove that the inventory was on the estate of a different person from what it purports to be. If the deceased had been known as well by the name of *George* as that of *Anthony*, it would be different. The replication attempts to set it out, but there is no proof of the fact. The defendant in his rejoinder denies that he was called by both names. The defendant might be estopped from denying his own signature, but there is nothing to estop him from saying the deceased was not the person named in the bond.

1815.

Johnson
vs
Medtart

One of the issues was on the act of limitations, and the jury have found that issue for the defendant. This puts the case at rest.

*Taney.* in reply. The verdict is general, and being for the defendant, went to all the issues   Whether limitations barred or not, the plaintiff, under the opinion of the court, could not recover. The replication states expressly that the deceased was called as well by the name of *George* as *Anthony;* and the rejoinder refers to the name in the bond. There was an attempt to connect the inventory with the bond, to show that it was the inventory on the estate upon which letters of administration had been granted. The evidence was not rejected because it was not sufficient, but because there was no evidence that he was called as well by the one name as the other. The obligors gave the name to the deceased, and they are estopped to deny he was not called by both names. The inventory is the act of the administrators, and their miscalling the deceased shall not benefit them. It is their act, and others are not to be injured thereby.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

December.

A w it *de homine
replegiando* cannot
legally issue from
any of the courts
of law of this state.

JOHNSON vs. MEDTART.

APPEAL from *Frederick* County Court. In this case a writ *de homine replegiando* issued, (bond with security for that purpose having been first given,) to replevy the plaintiff, (now appellant,) out of the possession of the defendant, (the appellee.) The writ commanded the sheriff, "that justly and without delay you cause to be replevied *J Johnson*, whom *J. Medtart* hath taken, and doth keep taken, as it is said, unless he was taken by the command of any of the justices of the said state for death of man, or for any other right for which he may not be replevied according to the laws of this state, that we may hear no more clamour thereupon for want of justice. Hereof fail not," &c. The sheriff returned the writ, "Replevied, and the defendant summoned." The defendant appeared and moved the court *ex officio* to quash and abate the writ, for the following reasons: 1. Because it has been issued by the clerk of this court contrary to the practice of this court, and contrary to the laws of this state. 2. Because the writ upon the