CRANE *vs.* DYGERT, Sheriff, &c.

Where a sheriff actually levies an execution on the property of a defendant *two months* before its return, and then *seven months* after the writ is returnable, returns that he has made the amount directed to be levied, such evidence is *prima facie* sufficient to establish the fact that he received the money antecedent to the commencement of a suit brought against him, nearly three months after the time when the writ was returnable.

Payment of the money into court by the sheriff after the commencement of the suit is no defence to the action.

Interest is not recoverable in such case, although the money is paid into court; being paid in on a rule after suit brought.

If a sheriff retain money collected by him after the return day of an execution he is liable to interest.

Where, in a declaration against a sheriff for money collected on an execution it is stated that the direction was to levy a certain sum without specifying interest, and by the execution it appears that he was directed to levy the amount with interest, the variance is not material.

It is no cause of challenge of an array of jurors, that two sets of jurors are drawn at the same time from the jury box, for two distinct courts, if they are kept entirely separate and a distinct panel of each is given to the sheriff.

Nor is it cause of challenge that the jurors are drawn more than fourteen days before the sitting of the court at which they are to serve.

THIS was an action of assumpsit, tried at the Herkimer circuit in March, 1829, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The action was commenced in October term, 1826, and was brought to recover monies collected by the defendant as sheriff of Herkimer on an execution. The declaration contained a special count, stating the delivery to the sheriff on 20th May, 1826, of an execution in a certain cause, on which was an endorsement *directing him to levy* $242,46 *and his fees,* and that he then and there levied the same out of the goods of the defendants in the execution. There were also counts for monies had and received, and lent and advanced. The plaintiff produced an exemplification of the execution, which was tested 13th May, 1826, returnable in the following August, on which was an endorsement directing the levy of $242, 86, *with interest since May,* 1826, besides fees. There was also an endorsement that the execution was received by the sheriff on 29th of May, 1826, and that on the same day he

levied the same on the goods of the defendants. The following return also appeared on the exemplification: "By virtue of the within writ I have made of the goods and chattels of the defendants the sum of $242,86, and $4,23 interest, which I have ready in court to render to the said Z. C. for his damages aforesaid, and which I have returned under the rule of this court. Dated March, 1, 1827." Signed, "John Dygert, sheriff." The plaintiff claimed to recover interest on the sums mentioned in the return from 2d March, 1827, to the *quarto die post* of the next term, to which the defendant objected. He also objected to the exemplification of the execution as evidence on the ground of the variance in the direction to the sheriff, the execution directing the levy of *interest* and such direction not being stated in the declaration, which objections were both overruled. It being admitted that the sheriff on the 2d March, 1827, paid the monies mentioned in his return into court by depositing the same with the clerk at Utica, the defendant moved for a nonsuit on the ground that there was no evidence of the receipt of the money by him except his return, and that did not shew the money in his hands previous to the commencement of this suit; and that the evidence which charged him also discharged him, as it shewed the money paid into court. This motion was denied. The defendant then requested the judge to charge the jury that the plaintiff was not entitled to recover interest, unless they believed that the defendant had used or converted the money to his own use. The judge refusing so to instruct the jury, the defendant excepted to the several decisions made, and the jury found a verdict for the plaintiff for $284,91.

The defendant in this case interposed a challenge to the array. The exceptions alleged were, that on the 16th January, 1829, the clerk of Herkimer drew two sets of jurors from the jury box, 36 in number each; one set to serve at the court of common pleas on the first Monday of February thereafter, and the other at the circuit on the 9th day of March; that *six* of the jurors summoned for the common pleas were excused by the court from serving, and *two* made default and did not appear; and it was insisted that it was

irregular for the clerk to draw two juries at the same time; that the true construction of the act required that the jury should be drawn at the shortest possible time previous to the court at which they were to serve, to prevent tampering with the jurors, and to obtain full juries, which could not be expected if they were drawn long before court; death, removals and other casualties would probably intervene.

Both questions on the challenge to the array and on a motion for a new trial, were submitted at the same time.

*D. Burwell*, for defendant.

*Cooper & Hilton*, for plaintiff.

*By the Court*, SUTHERLAND, J. The challenge to the array was properly overruled. The act, (1 R. L. 328, sec. 11,) does not limit the drawing of the jury to any particular number of days before the sitting of the court at which they are to serve. They must be drawn at least 14 days before the court; but it need not be precisely 14 days. The matter seems to be left in some degree to the discretion of the clerk. In some counties a longer time than this may be highly expedient, if not necessary. The panel in this case was drawn on the 16th January for the 9th March. If the clerk had a discretion upon the subject, we cannot say, upon this record, that it has been abused.

The fact that the jury for the court of common pleas and general sessions were drawn at the same time, forms no ground of objection to this panel. They were kept entirely distinct, as much so as though the drawing had been on different days, and a panel of each was given to the sheriff. In *Gardner* v. *Turner*, (9 Johns. R. 260,) the clerk drew out 72 names and put them in a list, and then arbitrarily designated 36 names as a panel for the circuit, and the other 36 as a panel for the court of common pleas, and directed the sheriff to summon them accordingly. The clerk in fact selected the jurors in that case. Not so here. The motion in arrest must therefore be denied.

As to the bill of exceptions, the variance between the execution, produced in evidence, and that stated in the declara-

NEW-YORK,
May, 1830.

Crane
v.
Dygart.

tion was not material. The endorsement, as far as it is set forth, is accurate, and the variance is merely in the *omission* to aver that the sheriff was directed to levy *interest* as well as the damages and costs. It could raise no doubt as to the identity of the writ. The description is perfect in every other respect. In *Stiles* v. *Rawlins and others*, (5 Esp. R. 133,) cited by the defendant's counsel, the declaration stated that, the writ was endorsed to levy £600, together with poundage, officer's fees, *and other legal charges and incidental expenses*. The writ produced did not contain the concluding direction. It was not an omission to state what was upon the writ, but it was an affirmative allegation that it contained an endorsement which in point of fact it did not; that, too, was an action for a false return, in which the plaintiff would be held to strict proof.

The evidence of the receipt of the money by the defendant upon the execution, before the commencement of this suit, was *prima facie* sufficient. The suit was commenced as of October term, 1826. The execution was tested the 13th of May, and returnable the 1st Monday of August, 1826. It was received and levied by the sheriff on the 29th of May, as appears by his own endorsement. The sheriff's return upon the writ contains the evidence of the receipt of the money by him. The sheriff admits that he has received the money, but does not state when he received it. The execution having been actually levied by him, upon personal property sufficient to satisfy it, on the 29th May, 1826, he had abundant time to sell and convert that property into money before the return day, and it was his duty so to have done ; and as between him and the plaintiff, he is in that respect to be presumed to have done his duty. Whether it would have been competent for him to have shewn that the money was not in fact received by him until after the commencement of this suit, or whether the time of its actual receipt was material or not, it is unnecessary to consider. The motion for a nonsuit on this ground was properly refused.

It has already been decided in this cause, when it was formerly before us upon demurrer, (1 Wendell, 534,) that a demand of the money before suit brought was not necessary, and that the payment of the money by the sheriff to the clerk

of the court, *after the commencement of the suit,* was no defence to the action.

Interest was properly allowed from the time when the money was paid into court by the sheriff. That was seven months after the return day of the execution, when he is presumed to have received the money. If the payment into court was no defence to the sheriff, as we have held, then the money is to be considered as having remained in his hands, in violation of the plaintiff's rights and of his own duty, and on every principle he ought to be charged with interest.

An ordinary agent or attorney is not chrageable with interest on money received for his principle, if he duly advises his principal of its having been received, until payment is demanded from him, (*Williams* v. *Storrs,* 6 Johns. Ch. R. 350,) unless he has received special instructions to remit as fast as received. The sheriff is directed by the execution not only to receive the money, but to bring it into court on the return day. If he complies with this mandate, he is safe. If he does not, but retains the money in his own hands, he violates his duty, and has no claims, upon any principle, to an exemption from the payment of interest. It is money had and received to the plaintiff's use.

Motion for new trial denied.