(Decided 31st March, 1880.)

---

WILLIAM L. HOPKINS and PETER NEW *vs.* THE STATE OF MARYLAND, use of GEORGE GONSO, use in part of SAMUEL LIDIE.

*Pleadings—Variance between an Injunction Bond and Narr. in suit on Bond—Continuance—Questions of Evidence—Return of Sheriff to a Writ of Execution—State, legal plaintiff in a suit on Bond—Ruling by which Appellants are not harmed.*

G. on 2nd December, 1871, obtained judgment in the Court of Common Pleas against H. On the bill of H., filed the same day in the Circuit Court of Baltimore City against G., and S. L. and A. R. to whose use the judgment had been entered, and L. C. J., a partner of H. for an injunction against G., A. R. and S. L. to enjoin them from further prosecuting said suit and also a suit then pending, which had been instituted by G. against the firm of H. & J., the Circuit Court ordered that the injunction issue "as prayed in said bill," on H. filing a bond with approved surety; which was duly

Hopkins and New *vs.* The State, use of Gonso, *et al.*

given by H. and N. as surety, and the writ was issued against G., A. R. and S. L.   On answers being filed and testimony taken, the injunction was dissolved on 23rd April, 1872.   In a suit on the injunction bond, it appeared, that the *narr.* described the proceedings for the injunction as brought by H. against G., A. R., S. L. and L. C. J., while the injunction bond recited, that it was a suit in which H. was complainant and G., A. R. —— L. were defendants, and its condition was to save the "defendant" harmless; it further appeared, that the bond was filed in the equity case of H. *vs.* G., A. R., S. L. and L. C. J. in the Circuit Court, and that there was no other case pending in said Court between the same complainant and the same defendants or either of them, and that the bond was prepared and the blanks filled up by H's solicitor in the equity case, who was his attorney in this action against him and N.   On objection by H. and N. to the admission of the injunction bond in evidence, it was HELD :

That there was no insufficiency of the injunction bond, nor of the writ of injunction, nor variance between the bond and the writ, and between the *narr.* and the bond ; and that recovery could be had on the bond.

No appeal lies from the refusal of a Court to grant a continuance.

By agreement of counsel in a suit on an injunction bond, the original papers in the injunction case were to be offered, subject to exception, in place of the exemplification of the record.   On objection to the admission in evidence of a petition for the taking of proof, filed in the injunction case, it was HELD :

That it was admissible.

A question asked G. on cross-examination, whether he was not insolvent at the time he obtained the judgment against H., and did not owe H. & J. a large amount, and whether he did not have said judgment entered to the use of R. and L. for the purpose of embarrassing, hindering and delaying his creditors, was properly rejected by the Court below, as the matters involved in this question had been included in the subject-matter of the injunction suit, and H. was concluded thereby.   Even had it been otherwise, and G. were then insolvent, he had a right to enter said judgment to the use of R. and L. for valuable consideration, and G's insolvency could not have interposed any obstacle to a recovery of the money by them in a suit on the injunction bond.

Hopkins and New *vs.* The State, use of Gonso, *et al.*

Evidence offered that H. & J. failed in the spring of 1872, was admissible, as tending to prove that H. was insolvent at the time of the dissolution of the injunction.

A receipt from one R. (who held a third mortgage for over $5000, on lands owned by H. in Frederick Co., executed after the judgment in favor of G. had been rendered against H., and the injunction had issued, which lands had been sold under mortgage proceedings in that county,) to the effect that he had received from one B. mortgagee, $2164.66 audited to him as assignee of H. & J., and $1831.21, audited to him as mortgagee of H. by the audit in the Circuit Court for that county, was admissible in evidence, as it followed from this proof that the appellees could have recovered on the judgment against H. by execution on the Frederick County lands, if they had not been enjoined.

An offer by the appellants to prove that from the time of the granting of the injunction to the time of its dissolution in April, 1872, the Frederick County lands would not have sold for enough to pay off the liens upon them, was properly rejected as immaterial, specially as it appeared that the property sold for $11,000 in August, 1872, the encumbrances amounting to $8658.66, exclusive of the third mortgage to R.

An offer by the appellants to prove that the Frederick County lands with the encumbrances on them, were of no value to H's creditors, that H. was insolvent and that R. as assignee of the second mortgage, and the third mortgagee, was the only bidder for the property when sold, that it was not worth what R. bid it in for, and that the property afterwards sold for $5000, was properly rejected by the Court below, as such facts were immaterial.

It appearing that if the third mortgage had not intervened between the second mortgage on the Frederick County lands and the judgment, the judgment could have been realized by execution if it had not been enjoined, evidence was admissible of the value of those lands during the time the injunction was in force.

Execution on the judgment against H. was issued on the 25th April, 1872, to the Sheriff of Frederick County, and was docketed, according to the certificate of the Clerk of the Circuit Court for Frederick County, at the May term of said Court, and was returned *nulla bona*, but there was nothing in the record to show at what time the special return was made. HELD:

That it could not be presumed that it was made subsequent to the time when the matters therein described and returned, transpired.

In a suit on a bond the State of Maryland is the legal plaintiff, and upon a judgment entered to the use of others, but one recovery can be had.

Where the appellants are not injured by the refusal of the Court below to grant leave to amend their pleadings and file additional pleas, this Court will not consider their exception.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The fact stated in the special return of the sheriff of Frederick County, referred to in the opinion, was: that Joshua Biggs, by virtue of a power of sale contained in a mortgage to him from Gonso and wife, upon default being made, and all the provisions of the Code having been complied with, did, on the 15th August, 1872, sell at public auction to Daniel M. Reese, the lands and premises mentioned and described in the mortgage, and being the same lands and tenements levied on by the sheriff to satisfy the writ of *fieri facias* issued in this case, at and for the sum of $11,000, which sale was finally ratified by the Circuit Court for Frederick County; and he then certified, and returned to the Court that there were no goods, chattels, lands and tenements in his bailiwick, of Wm. L. Hopkins, out of which the debt, interest and costs, mentioned in the writ of *fieri facias*, could be made, as by the annexed writ of *fieri facias* he was commanded.

*Exceptions.*—At the trial the defendants took eleven exceptions. The *first exception* was to the admissibility in evidence of the injunction bond, and is fully stated in the opinion. The *second exception* was abandoned. The *third and fourth exceptions* are stated in the opinion.

*Fifth Exception.*—After the evidence set forth in the foregoing exceptions the plaintiff produced a witness who testified that Hopkins & Jones failed in the spring of

1872; that he could not state the precise month; that they were weak all through the winter, and that he frequently lent them money. The defendant objected to the competency of this proof, but the Court (Brown, J.,) admitted it, and the defendants excepted.

*Sixth Exception.* — The plaintiff then produced one Biggs, and offered the following paper, viz., Received from Joshua Biggs, mortgagee, the sum of $2164.66, audited to me as assignee of Hopkins & Jones, and the sum of $1831.21, audited to me as mortgagee of W. L. Hopkins, by the audit made and ratified in No. 3823, Equity, Circuit Court of Frederick County.

D. M. Reese.

To the competency of this paper, admitted by the Court, the defendants excepted.

The said plaintiff proved by said witness, that the signature of the said Reese was in his genuine handwriting; that said Biggs had paid to said Reese the sums of $2164 and $1831.21, those sums being audited to said Reese in a proceeding in equity, in Frederick County; that these sums were paid to him; that he purchased the property in question at the mortgage sale.

*Seventh Exception.*—And thereupon, the defendants proposed to prove by said witness, that the property in Frederick County conveyed to Hopkins by deed from Gonso, between the periods of the granting and the dissolution of the injunction, would not have sold for enough to cover the encumbrances upon it; but the Court decided that said evidence was irrelevant, and the defendants excepted.

*Eighth Exception.*—And thereupon, the defendants asked permission to offer evidence, tending to prove that the property conveyed by the deed of Gonso to Hopkins, at the time of the granting of the injunction up to the time of the mortgage of Reese being placed upon it, and prior

to the dissolution of the injunction, was not of sufficient value to pay the encumbrances upon it; but the Court refused to allow such evidence to go to the jury. The defendants excepted.

*Ninth Exception.*—And thereupon, the defendants produced William L. Hopkins, one of the defendants, who testified as follows: he was insolvent from the time of the date of judgment and injunction up to the dissolution; and further offered evidence to prove as follows: the encumbrances upon the property in Frederick County, (being the property conveyed by Gonso,) made it of no value to his creditors; he had no interest in the firm of Hopkins & Jones; he owed said firm, prior to the judgment, $3000; and he owed various parties large sums of money, which he was unable to pay them; he was present at the sale of the property in Frederick county, in August, 1872; Reese was the only bidder; the property was of no such value as the price at which Reese bid it in indicated; the object of Reese in making a bid at that figure was to prevent any depreciation in the value of the estate in the neighborhood; Reese had nothing to pay, as he was the assignee of the second mortgage, and the third mortgagee; the property afterwards sold for $5000; it would not have sold for enough to cover the first mortgage, at any time after the judgment was obtained; but the Court decided said evidence to be incompetent proof, and refused to permit the same to be introduced. The defendants excepted.

*Tenth Exception.*—The additional pleas mentioned in the Court's statement of this exception, are as follows:

3rd. That at the time of the issual of the said injunction, and prior thereto, all the property, both legal and equitable, of the said Wm. L. Hopkins, was subjected to certain encumbrances, which were not in any way released or discharged between the period aforesaid, and the dissolution of said injunction, which liens and encumbrances were in no manner discharged during said periods, and

by reason whereof, the said William L. Hopkins was, before and during the pending of said injunction, utterly insolvent, and unable to pay off the said liens; and at the same time, in addition to said encumbrances, the said Hopkins was indebted unto various other persons in large sums of moneys, to wit., the sum of $10,000, for the payment of which the said Hopkins had no property, means or resources whatsoever.

4th. That at the sale of the said property, the said Reese, in August, 1872, bid in the said premises, as assignee of the second mortgage, and as third mortgagee, for a sum largely in excess of the value of the said premises, in order to protect himself as aforesaid, and to prevent a depreciation of the said property, which at no time during the pendency of the injunction would have realized over the sum of $6000.

5th. That the said Gonso, at and before the time of the obtention of the judgment against the defendant Hopkins, was and still is indebted to the firm of Hopkins & Jones, of which the said Hopkins was a member, in a large sum, to wit, the sum of $5000, and that the failure of the said Gonso, to make payment, he being wholly insolvent, caused the failure of the said firm of Hopkins & Jones, and that the said Gonso, upon the obtention of the said judgment against Hopkins, so *instanter* entered the same to the use of the equitable plaintiffs, to hinder, delay and embarrass the said Hopkins & Jones, co-partners as aforesaid, and to hinder, delay and defraud his creditors, and that the defendants are the assignees of said claim, which they desire to offset against the said plaintiff's supposed claim.

6th. That after the dissolution of the injunction, the equitable plaintiffs were guilty of *laches* in not seizing the equitable interest of the said Hopkins in and to the certain property alleged in the declaration to have been owned by him.

11*th Exception.*—The plaintiff then offered the following prayer:

If the jury find from the evidence, that the said Gonso obtained against the defendant, Hopkins, the judgment offered in evidence, and that by reason of the writ of injunction offered in evidence, execution on said judgment was restrained and prevented during the continuance of said injunction, and that said injunction was dissolved, and shall further find that by reason of the issuing of said injunction, the debt secured by said judgment was lost to the equitable plaintiffs, and could not be recovered by them, and that the defendants executed and delivered to the clerk of the Circuit Court of Baltimore City, the injunction bond offered in evidence, under the circumstances testified to, and that the said bond was approved by said clerk, then the plaintiff is entitled to recover the amount of said judgment, with interest thereon, from the time of the issuing of said injunction, and the costs of said Gonso in the case in which said judgment was obtained; provided such amount come within the penalty of said bond.

And the defendant offered eleven prayers: The first, second, second and a half, third, fifth and tenth are stated in the opinion; the fourth and eleventh it is not necessary to state; the others are as follows:

6. That the burden of proof is upon the plaintiff, to show to the satisfaction of the jury, that at the time of the issual of the injunction, and prior to its dissolution, the said Hopkins owned property out of which payment of said judgment could have been made, and that but for the issual of said injunction prohibiting execution as aforesaid, payment could have been enforced of said judgment.

7. That the plaintiff's evidence under the sixth prayer, being confined to the production of the deed from Gonso and wife to Hopkins, which deed shows the property therein conveyed to have been subjected to certain mort-

gages therein described, and the further proof contained in a certain record of the sale of the said property, showing that Reese bid in the premises, and that he was at the said time assignee of the second mortgage, and mortgagee of the third mortgage, and received certain sums of money on account thereof, and as assignee of the second mortgage, and that said sale was made in August, 1872, is not evidence legally sufficient to go to the jury, to show that upon the day of the issual of the injunction, and prior to its dissolution, the said Hopkins owned property, out of which the payment of the said judgment could have been enforced.

8. The Court exclude from the jury, the consideration of the special return of the sheriff in Frederick County, because the said return, among other defects, is made to the May Term, 1872, professes to relate, describe and return matters which transpired subsequently thereto, as appears upon the face of said return.

9. The Court exclude from the jury, the receipt purporting to be the receipt of Reese offered in evidence.

The Court granted the plaintiff's prayer, and refused the defendants' first, second, second and a half, third, fourth, fifth, seventh, eighth, ninth, tenth and eleventh prayers, and granted their sixth; the defendants excepted, and the verdict and judgment for $1124.05 being for the plaintiff, the defendants appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, and IRVING, J.

*John Henry Keene, Jr.,* for the appellants.

*Albert Ritchie,* for the appellees.

GRASON, J., delivered the opinion of the Court.

It appears from the record in this case that George Gonso obtained a judgment against William L. Hopkins, on the

second day of December, 1871, in the Court of Common Pleas, for $743.13, with interest thereon till paid, and $54.32 costs; and that on the same day Hopkins filed a bill of complaint in the Circuit Court of Baltimore City, against George Gonso, Samuel Lidie and Albert Ritchie, to whose use the judgment had been entered, and L. C. Jones, a partner of Hopkins, praying for an injunction against Gonso, Ritchie and Lidie, to enjoin them from further prosecuting said suit, and also a suit then pending, which had been instituted by said Gonso against the *firm* of Hopkins & Jones. On the same day said Circuit Court passed an order that an injunction issue "*as prayed in said bill,*" on the complainant filing a bond in the penalty of $1500, with security to be approved by the clerk of said Court. A bond was accordingly prepared by the attorney of the complainant, and was executed by the complainant and Peter New, was approved by said clerk and filed and the injunction issued, and was served on the parties. Answers were filed, and evidence taken; and the injunction was dissolved on the 23rd day of April, 1872. Suit was then instituted on the injunction bond in the Court of Common Pleas, which resulted in a judgment for the plaintiffs, the present appellees; and the defendants appealed.

There was a demurrer to the *narr.*, which was overruled, and during the progress of the trial the appellants took ten exceptions to the rulings of the Court with respect to evidence, and one to the Court's rulings in granting the appellees' prayer and in rejecting all the prayers of the appellants except their sixth, which the Court granted. There was also a motion in arrest of judgment, which was overruled.

The demurrer and the first, second, second and a half, third and fifth prayers, and the motion in arrest, are all based on a supposed insufficiency of the injunction bond, as well as of the writ of injunction and a variance between

the two, and between the *narr.* and bond; and it was contended that the bond was so defective that no recovery could be had upon it, and that the writ of injunction did not restrain the appellees from enforcing their judgment by execution.　The *narr.* describes the suit in which the injunction issued as brought by William L. Hopkins against George Gonso, Albert Ritchie, Samuel Lidie and Louis C. Jones, while the injunction bond in its recital of the case in which the injunction was about to issue, describes it as one in which William L. Hopkins is complainant and George Gonso, Albert Ritchie, — Lidie are defendants; omitting to state Lidie's first or Christian name, and omitting the name of Louis C. Jones altogether, and its condition is to save harmless the defendant, omitting the *s* at the end of the word defendant.　The *narr.* properly and correctly describes the suit in which the injunction issued, it being a suit in equity against George Gonso, Albert Ritchie, Samuel Lidie and Louis C. Jones.　The bond refers to the suit; the order of Court directing the injunction to issue, directs it to issue "*as prayed in said bill,*" and the writ of injunction itself refers to the bill, and enjoins the three parties against whom the bill prayed it might issue, and gives their full names.　It was also proved that the bond was filed in the equity case of *William L. Hopkins vs. George Gonso, Albert Ritchie, Samuel Lidie and Louis C. Jones,* in the Circuit Court of Baltimore City, and that there was no other cause pending in said Court between the same complainant and the same defendants or either of them, and that the bond was prepared and the blanks filled up by Hopkins' attorney in that suit, who is also the appellants' attorney in this.

In the case of *Frantz vs. Smith,* 5 *Gill,* 285, an appeal bond recited that the judgment was for the sum of twenty-five dollars, when, in fact, it was for twenty-five dollars *and interest.* The bond was filed in the suit in question. There was no other suit between the same parties, and the bond

had been prepared by the obligors, and it was held, that the judgment was sufficiently described and that, if there was any variance, the obligors could not be permitted to avail themselves of errors in the bond, which they themselves had prepared.

In 1 *Term Reps.*, 239, the declaration stated that the precept was directed to the Mayor, and the precept produced was directed to the Mayor and Burgess, and it was held sufficient.   In 2 *Camp. R.*, 525, the declaration stated that the *fi. fa.* was directed to A. B. and C. D., sheriffs of Middlesex, and the writ produced was directed to the Sheriff of Middlesex generally, and it was held to be no variance.   In the case of *State, use of Wilcoxen vs. Wooton*, 4 *H. & J.*, 21, the action was brought on an administration bond, which recited that the two obligors first named, were the administrators of *George Wilcoxen*, and conditioned for the faithful administration by them of the personal estate of said *George.*   The name of the intestate was not *George*, but *Anthony*; and the only evidence offered to prove the amount of assets in the hands of the administrators was the inventory of the goods and chattels of *Anthony Wilcoxen.*   Parol evidence was offered to show the name of the intestate, but it was rejected, and upon an appeal to this Court the ruling of the Court below was reversed on the ground that the bond was really given by the administrators of *Anthony Wilcoxen*, and the variance was a mistake committed by the obligors themselves.   In 4 *Wend.*, 675, the suit was against a Sheriff for money collected on an execution, and the declaration stated that the execution directed him to levy $242.16 and his fees, and the exemplification of the execution offered in evidence showed that he was directed to levy $242.16, *with interest from May*, 1826, and his fees, and the Supreme Court of New York decided that "the variance between the execution produced in evidence, and that stated in the declaration was not material.   The indorse-

ment, so far as it is set forth is accurate, and the variance is merely in the omission to aver that the Sheriff was directed to levy *interest* as well as the damages and costs. It could raise no doubt as to the identity of the writ." See also *Jenkins & Hewes vs. Hay*, 28 *Md.*, 559, and *Wallis vs. Dilley*, 7 *Md.*, 248. In the case of *Smith vs. Eubanks*, 9 *Yerger*, 22, the suit was upon an indemnity bond given to indemnify the plaintiff from liability on a note for $129, and the *narr.* averred that suit had been brought against the plaintiff on said note and judgment recovered against him for the sum of two hundred dollars and fifty dollars costs, which he had paid. The record of the judgment produced showed that the amount recovered was different from that stated in the declaration, and its admission in evidence was objected to on the ground of variance, but the objection was overruled ; and upon appeal the Supreme Court of Tennessee said: "It is true there is a variance in the amount of the judgment set forth in the pleadings and that shown by the record, which would have been fatal, if the record had been the foundation of the suit. * * * * But in this case, the bond of indemnity is the foundation of the suit. Indemnification, or no indemnification, is the question in dispute, to which the judgment is mere matter of inducement. When matter of fact is the foundation of an action and matter of record inducement thereto, it has always been held that a slight variance in the description of the record is not fatal."

But it is contended that the writ of injunction which was issued was inoperative to restrain the appellees from prosecuting their writ of execution against the appellant, Hopkins, because the writ, by its terms only enjoined them from prosecuting certain suits against the firm of Hopkins & Jones. It has been already shown that the declaration correctly states the equity proceedings in which the injunction issued. The bill in that case was filed against Gonso, Ritchie, Samuel Lidie and Louis C. Jones,

and it prayed process against all of them, and that they might be required to answer the allegations, and prayed that an injunction might issue against only three of them, to wit: George Gonso, Albert Ritchie and Samuel Lidie, to enjoin them "from all further proceedings in the suit of said Gonso against your orator, and the suit of said Gonso against Hopkins and Jones, and that each of the defendants may be restrained by injunction." Jones was not a party plaintiff in either of said suits, and therefore no injunction was prayed for or was issued against him. The Court ordered the injunction to issue "as prayed in said bill." The writ itself in its recitals refers to the bill of complaint exhibited in the Circuit Court of Baltimore City against George Gonso, Samuel Lidie and Albert Ritchie "for an injunction to restrain you, and each of you from all further prosecution of certain suits instituted by George Gonso against the firm of Hopkins & Jones, in the Court of Common Pleas, (*and which are more particularly referred to in the bill of complaint.*") The parties to the suits were thus expressly referred to the bill of complaint for the purpose of ascertaining *what* suits were intended to be, and were enjoined, and upon looking at the bill they could not have failed to see that the suit of Gonso against Hopkins, individually, the judgment in which had been entered to the use of Albert Ritchie and Samuel Lidie was covered by the writ of injunction, as well as Gonso's suit against Hopkins & Jones.

Where the writ of injunction refers to the bill, the latter may be examined for the purpose of ascertaining to what the injunction applies. In *Endicott vs. Mathis,* 9 *N. J.,* (*Equity,*) 110, the writ enjoined a suit in which E. M. *alone* was plaintiff, when the bill prayed for an injunction to restrain a suit in which E. M. *and wife* were the plaintiffs. There being no suit in which E. M. alone was plaintiff, and no doubt as to the suit intended to be enjoined, the injunction was held to operate on the suit in which E. M.

and wife were the plaintiffs. In *Sullivan vs. Judah*, 4 *Page's Chan.*, 446, which was an attachment for violation of an injunction, while the Chancellor stated that the injunction should, in itself, contain sufficient to apprise the party upon whom it is served what he is restrained from doing, without the necessity of examining the bill of complaint, he nevertheless held that the party did know, *from an examination of the records of the Court*, or otherwise, and the party was, accordingly, held guilty of the breach of the injunction. In *Freeman vs. Dearing*, 4 *Edwards Chan.*, 621, there was also a motion for an attachment for an alleged breach of an injunction. The language of the injunction differed from the prayer of the bill, but it was held that the injunction must be understood as if it followed the prayer of the bill, and that the defendants were enjoined no further than the bill required. It is to be inferred from what was said by this Court in *Levy vs. Taylor*, 24 *Md.*, 291, that the bill of complaint may be examined for the purpose of ascertaining the extent of the application of an injunction. That was a suit on an injunction bond, and it was there said that the bond, in its recital, referred to the bill of complaint and stated its objects, and the Court then go on to say: "These," (that is, the objects of the bill) "were to prevent the parties, defendants to the bill, from selling or disposing of, or intermeddling with certain goods in a store, and that the Court might apply these effects to the payment of the debts of the complainant and the other creditors of Charlotte Levy." It seems clear that the bill had been examined in that case for the purpose of ascertaining the extent of the liability which the obligors in the injunction bond had assumed.

In *Williamson vs. Hall*, 1 *Ohio State R.*, 190, it was decided that a reference to the bill makes it a part of the writ of injunction, and, if there be any difference, the bill controls the injunction. Looking at the bill of complaint

the order of Court thereon and the writ of injunction issued thereon, there can be no doubt that the suit of Gonso, Ritchie and Samuel Lidie against William L. Hopkins, individually, was restrained by the injunction. The rulings of the Court below in admitting the injunction bond in evidence, to which the first exception was taken, and in rejecting the appellants' first, second, second and a half, third, fourth and fifth prayers were therefore perfectly correct. So also was the overruling of the demurrer and the motion in arrest.

The second exception was taken to the refusal of the Court to grant a continuance. This is not the subject of appeal and was abandoned in this Court. The third exception was taken to the admission in evidence of the petition filed in the injunction case for the taking of proof in that case. Under the agreement of the counsel in this case the original papers in the injunction case were to be offered, subject to exception, in place of the exemplification of the record of that case. Under this agreement all the original papers in the injunction suit were clearly admissible as constituting the record, and the petition constituted part of that record.

The fourth exception was taken to the ruling of the Court in refusing to permit the question to be put to Gonso on cross examination, whether he was not insolvent at the time he obtained the judgment against Hopkins, and did not owe Hopkins & Jones a large amount, and whether he did not have said judgment entered to the use of Ritchie and Lidie, for the purpose of embarrassing, hindering and delaying his creditors. The very matters involved in this question to the witness had been included in the subject-matter of the injunction suit and the appellant Hopkins was concluded thereby. But even had it been otherwise and Gonso had then been insolvent, he had a right to enter said judgment to the use of Ritchie and Lidie for valuable consideration, and Gonso's insolvency

could not have interposed any obstacle to a recovery of the money by them in a suit on the injunction bond.

The evidence objected to in the fifth exception was clearly admissible, as it tended to prove that Hopkins was insolvent at the time of the dissolution of the injunction.

The receipt of Reese set out in the sixth exception was also admissible. The auditor's account, stated upon the sale of Hopkins' Frederick County lands, and which sale had been finally ratified by the Circuit Court for Frederick County, after applying sufficient of the proceeds of sale to the satisfaction of the balance due on the $8000 mortgage, and the $2000 mortgage, with the interest on both, applied $1831.21 to Reese's third mortgage executed after the judgment had been rendered against Hopkins in favor of Gonso, and after the injunction had issued; and the receipt was introduced for the purpose of showing that said amount had been actually received by Reese from the proceeds of said sale. From this proof it followed, as a matter of course, that the appellees in this case could have made their money on the judgment against Hopkins by levying an execution on the Frederick County lands, if they had not been enjoined from so doing, by the injunction served upon them, until after the third mortgage on said lands had been executed by Hopkins to Reese, by which said judgment was cut out. The receipt was therefore properly admitted.

The seventh and eighth exceptions contained a general offer to prove that from the time of the granting of the injunction to the time of its dissolution said Frederick County lands would not have sold for enough to pay off the liens upon them. This offer was properly rejected, because it was immaterial to prove what the property would or would not have sold for between the periods mentioned; especially in view of the fact that the record proof in the case showed that the property did actually sell for $11,000 on the 15th day of August, 1872, about four months after the injunction was dissolved.

The offer of proof in the ninth exception was properly excluded from the jury. Whether the Frederick County property, with the encumbrances upon it, was of any value to Hopkins, or whether he was or was not insolvent, and the reasons which induced Reese to give $11,000 for the Frederick County lands, as well as the fact that the lands after Reese's purchase of them, sold for $5000, were all entirely immaterial facts, not proper to be submitted to the jury, and they were properly rejected.

The evidence having been closed on the 27th March, the Court adjourned to the 31st of the same month, and upon its meeting again on the last named day, the appellants' attorney asked leave to amend his pleadings by striking out the issues joined on the third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh and thirteenth pleas, and to withdraw those pleas and file the additional pleas, numbered three, four, five and six, as set out in the record. The Court refused to grant the leave asked, and this refusal forms the ground of the tenth exception. Whether the amendment asked for in this case is a matter in the discretion of the Court, or whether it is a matter of right, a denial of which is the subject of appeal, we do not deem necessary to decide in this case; for even conceding it to be a matter of right, the denial of which gives a right of appeal, it is perfectly clear that the appellants were not injured by the refusal of the Court to grant the leave asked. The facts necessary to sustain the three first of the additional pleas, had already been offered and rejected as immaterial and inadmissible, and we have shown, in considering the exceptions taken thereto, were rightly rejected. Even if the facts alleged in these additional pleas had been admitted to be true, they would not have furnished any defence to this suit. The fact relied upon in the sixth of these pleas was entirely immaterial, as it would have been idle for the appellees to have levied on Hopkins' equity of redemption in the Frederick County

lands, as it was shown by the proof in the cause that they had brought at public sale a sum not sufficient to satisfy the third mortgage upon them, which had been executed during the continuance of the injunction, and had priority over the judgment of the appellees.

The seventh prayer was properly rejected. It asked an instruction that the facts stated in it were not legally sufficient to go to the jury to show that Hopkins owned property at the time of the issue and dissolution of the injunction out of which payment of Gonso's judgment could have been enforced.

The proof shows that when the injunction issued there were but two mortgages on the Frederick County lands, amounting in principal and interest to the sum of $8658.66, and that while the injunction was in force another mortgage for over $5000 was placed upon them, that the injunction was dissolved 23rd April, 1872, and that in August following the property actually sold for $11,000, which was sufficient to satisfy the two first mortgages, principal and interest, leaving a balance of over $1800 to be applied to the third mortgage, and which could have been reached by an execution on the judgment, if it had not been enjoined. This was certainly competent evidence, to be submitted to the jury, of the value of the land during the time the injunction was in force.

The eighth prayer was properly rejected. The execution, to which the Sheriff of Frederick County made the special return, was issued on the 25th April, 1872, was docketed according to the certificate of the clerk of the Circuit Court for Frederick County, at the May term of said Court, and was returned "*nulla bona,*" but there is nothing in the record to show at what time *the return was made.* It cannot be *presumed* that it was made *subsequent* to the time when the matters therein described and returned, transpired.

The ninth prayer was properly rejected for the reasons which we have assigned for the admission of Reese's

receipt objected to in the sixth exception. The tenth prayer asked that the record of the proceedings of the Circuit Court for Frederick County as a Court of equity might be excluded from the consideration of the jury, and it was contended that it was not admissible as tending to prove the value of the Frederick County lands during the time the injunction was in force. This prayer was properly rejected for the same reasons we have assigned for the correctness of the Court's ruling on the seventh prayer.

The eleventh prayer was abandoned.

The appellees' prayer correctly puts the law to the jury on the facts stated therein, if found by the jury, and is not obnoxious to the objections urged against it by the counsel of the appellants, as the State of Maryland is the legal plaintiff and but one recovery upon the judgment can be had.

*Judgment affirmed.*

(Decided 1st April, 1880.)